Robert W. Brownlie (Bar No. 138793)
Ryan T. Hansen (Bar No. 234329)
**BROWNLIE HANSEN LLP**
10920 Via Frontera, Suite 550
San Diego, California 92127
Tel:   858.357.8001
Robert.Brownlie@brownliehansen.com
Ryan.Hansen@brownliehansen.com

Attorneys for Plaintiff
SANDRA PARZIALE, as co-trustee of
the Parziale Family Trust

# UNITED STATES DISTRICT COURT FOR

# THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SANDRA PARZIALE, as co-trustee of the Parziale Family Trust, on behalf of herself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> PATRICK NELSON, a resident of California; NELSON PARTNERS, LLC, a limited liability company; NP SKYLOFT ST, LLC, a Delaware limited liability company; NP SKYLOFT JV, LLC, a Delaware limited liability company; ACO SKYLOFT MANAGER, LLC, a Delaware limited liability company; AXONIC CREDIT OPPORTUNITIES MASTER FUND, LP, a Cayman Islands, limited partnership; AXSPV LLC SERIES NB CRE LENDER, a Delaware limited liability company; AXSPV LLC SERIES SBL CRE LENDER, a Delaware limited liability company; AXSPV LLC SERIES ACO CRE LENDER, a Delaware limited liability company; AXONIC CAPITAL, LLC, a Delaware limited liability company; CLAYTON DEGIANCINTO, a resident of New York; and DOES 1 through 50, inclusive, <br><br> Defendants. | CASE NO. <br><br> **CLASS ACTION** <br><br> **COMPLAINT FOR VIOLATION OF FEDERAL SECURITIES LAW, VIOLATION OF CALIFORNIA SECURITIES LAW, FRAUD, NEGLIGENT MISREPRESENTATION, AND CONSPIRACY TO COMMIT FRAUD** <br><br> **JURY TRIAL DEMANDED** |

{00009546}

Plaintiff Sandra Parziale, as co-trustee of the Parziale Family Trust, alleges:

1.      Plaintiff brings this action individually and on behalf of all persons and entities who purchased or otherwise acquired beneficial interests (the "Interests") in NP SkyLoft, DST, a Delaware statutory trust (the "Trust"), in the Trust's offering of such Interests pursuant to a Confidential Private Placement Memorandum dated December 19, 2018 (the "PPM") and the Supplement to the Private Placement Memorandum dated March 2, 2019 (the "Supplement"), and were damaged thereby (collectively, the "Class" or the "Investors").  Excluded from the Class are: (a) Defendants; (b) members of the immediate families of the individual Defendants; (c) the subsidiaries and affiliates of Defendants; (d) any person who is an officer, director or controlling person of any Defendant; (e) any entity in which any Defendant has a controlling interest; (f) Defendants' directors' and officers' liability insurance carriers, and any affiliates or subsidiaries thereof; and (g) the legal representatives, heirs, successors or assigns of any such excluded party.

## NATURE OF THE ACTION

2.      Plaintiff and the Class *have lost their entire investment of $75.5 million in the Trust*, resulting from the exercise of the rights of certain of the Defendants that were *concealed* from the Investors in the offering of the Interests, causing the loss of the only asset of the Trust.  Through this action, the Investors seek to recover damages resulting from their now worthless investment in the Trust.

3.      Defendants Patrick Nelson ("P. Nelson") and Nelson Partners, LLC (collectively, "Nelson Partners") offered the investments in the Trust during 2019 through February 2020.  Through the Trust, Nelson Partners promised an investment in a high rise off-campus dorm near the University of Texas, Austin (the "Trust Property") that would provide the Investors income, capital appreciation, and ancillary tax benefits under IRS Code section 1031, which allows the deferral of gains from the sale of appreciated real estate.

/////

CLASS ACTION COMPLAINT
CASE NO.

4.      The PPM and the Supplement represented that a "Preferred Equity Provider" might be used to facilitate the Trust's acquisition of the Trust Property. The Supplement confirmed that "a preferred equity provider contributed $35,000,000 of capital to the Trust."  The Supplement represented that "[u]pon the sale of the Interest, the net proceeds, less commissions and fees paid to the broker-dealers and their representatives, will be used to repay the capital contributed by the Preferred Equity Provider."  This representation echoed a representation in the PPM that "[i]f capital is provided by the Preferred Equity Provider, then upon the sale of Interests, the net proceeds, less commissions and fees paid to broker-dealers and their representatives, will be used to repay such capital."  The PPM also included a risk factor regarding the Preferred Equity Provider that "[i]f insufficient Interests are sold, the Preferred Equity Provider may not be fully repaid and there may be insufficient funds to pay the expenses, fees and commissions set forth in the Estimated Use of Proceeds … that were not paid at the closing of the acquisition.  If proceeds from the sale of Interests are not available to pay such expenses, fees and commissions, then the Trust may be required to use income from the Property to pay such items, reducing cash flow available to operate the Property and to pay distributions to the Investors."

5.      The Preferred Equity Provider consisted of funds controlled by Defendant Axonic Capital LLC and its principal, Defendant Clayton DeGiancinto. Those funds were Defendants AxSPV LLC Series NB CRE Lender, AxSPV LLC Series SBL CRE Lender and AxSPV LLC Series ACO CRE Lender, and are collectively referred to herein as the "Axonic Preferred Equity Providers."

6.      Concealed from the Investors and not disclosed in the PPM or Supplement is a secret agreement between the Nelson Defendants (defined below) and the Axonic Defendants (defined below).  The secret agreement is the Limited Liability Company Agreement of NP Skyloft JV, LLC (the "JV LLC Agreement"). Neither the PPM nor the Supplement disclosed the JV LLC Agreement or any of its

terms.  In fact, the Nelson Defendants and Axonic Defendants expressly agreed to conceal the terms from the Investors.

7.      Section 13.20 of the JV LLC Agreement provides that "Managing Member agrees not to disclose or permit the disclosure of any of the terms of this Agreement or any other documents executed in connection with this Agreement or the Preferred Equity Investment …."  The Nelson Defendants and Axonic Defendants further specifically addressed what could be disclosed to the Investors. Section 13.20 carves out from the secrecy provisions disclosures "reasonably necessary to comply with federal or state securities laws."  But they expressly limited such disclosures to "the tax treatment and tax structure of the transaction contemplated by this Agreement and all materials of any kind (including opinions or other tax analyses) that are provided to it relating to such tax treatment and tax structure."  To underscore the intent to keep the JV LLC Agreement and its terms secret even in the face of the need to comply with the securities laws, the Nelson Defendants and Axonic Defendants agreed that "[f]or the avoidance of doubt, this authorization is not intended to permit disclosure of the names of, or other identifying information regarding, the participants in the transaction, or of any information or the portion of any materials not relevant to the tax treatment or tax structure of the transaction."  Thus, ***even for securities law compliance the Nelson Defendants and Axonic Defendants agreed to only provide material "relevant to the tax treatment or tax structure of the transaction."  The existence of the agreement and its the terms could not be disclosed to the Investors.***

8.      Among the provisions of the JV LLC Agreement that the Nelson Defendants and the Axonic defendants agreed to conceal from the Investors provided that in the event Nelson Partners failed to repay the Preferred Equity Provider, the Preferred Equity Provider would have the right to (1) take over NP Skyloft JV, LLC, the managing member of Signatory Trustee of the Trust, NP Skyloft ST, LLC, and (2) sell the Trust Property and use the proceeds from the sale

to repay itself.  These provisions posed risks to the Investment that are unquestionably material.

9.      Unfortunately for the Investors, the risks prosed by the provisions materialized.

10.      Unbeknownst to the Investors, in May 2020, the Preferred Equity Provider exercised its rights under the secret agreement to take control of the managing member of the Signatory Trustee.  And then, in December 2020, also unbeknownst to the Investors, the Preferred Equity Provider sold the Trust Property, leaving the Investors with a now worthless Interest in a Trust that has no property or assets.

11.      Plaintiff on behalf of herself and the other Investors now brings this action to recover the damages resulting from Defendants' concealment and fraud.

## PARTIES

12.      Plaintiff Sandra Parziale is the co-trustee of the Parziale Family Trust, which invested $525,237.10, including a $6,484.40 broker credit, in the Trust on January 16, 2020 in reliance on the PPM and the Supplement.

13.      Defendant NP Skyloft ST, LLC is a Delaware limited liability company and the Signatory Trustee of the Trust (the "Trustee").  Based on the notice provisions in the Trust Agreement, Plaintiff is informed and believes and thereon alleges that the Trustee's principal place of business is located in Aliso Viejo, California.

14.      Defendant NP Skyloft JV, LLC is a Delaware limited liability company and is the managing member of the Trustee.  The managing member of the Trustee has the authority to direct the affairs of the Trustee.

15.      Defendant NP Skyloft Equity, LLC is a Delaware limited liability company and was the initial managing member of NP Skyloft JV, LLC from its formation through May 2020.

/////

{00009546}                                    5

CLASS ACTION COMPLAINT
CASE NO.

16.     Defendant Nelson Partners, LLC is a Utah limited liability company with its principal place of business in Orange County, California and was the sponsor of the offering of the Interests pursuant to the PPM and Supplement.

17.     Defendant Patrick Nelson is a resident of Orange County, California and, as disclosed in the PPM, "owned or controlled" the Trustee.  Plaintiff is informed and believes and thereon alleges that Defendant Nelson owned or controlled the Trustee through his ownership interest in Defendant NP Skyloft Equity, LLC.  Defendants NP Skyloft Equity, LLC, Nelson Partners, LLC and Patrick Nelson are collectively referred to herein as the "Nelson Defendants."  The Nelson Defendants controlled the Trustee and the Trust through May 2020.

18.     Defendant ACO Skyloft Manager LLC is a Delaware limited liability company and has been the managing member of NP Skyloft JV, LLC since May 5, 2020.

19.     Defendant Axonic Credit Opportunities Master Fund, LP, is a Cayman Island limited partnership and is the managing member of ACO Skyloft Manager LLC.

20.     Defendant AxSPV LLC Series NB CRE Lender is a Delaware limited liability company.

21.     Defendant AxSPV LLC Series SBL CRE Lender is a Delaware limited liability company.

22.     Defendant AxSPV LLC Series ACO CRE Lender is a Delaware limited liability company.  Defendants AxSPV LLC Series NB CRE Lender, AxSPV LLC Series SBL CRE Lender and AxSPV LLC Series ACO CRE Lender are the Axonic Preferred Equity Providers.

23.     Defendant Axonic Capital LLC is a Delaware limited liability company which manages and controls the Defendants Axonic Preferred Equity Providers.

24.     Plaintiff is informed and believes and thereon alleges that Defendant Clayton DeGiancinto is a resident of the state of New York, the managing member

of ACO Skyloft Manager LLC, and the Managing Member and Chief Investment Officer of Axonic Capital LLC.  Plaintiff is informed and believes and thereon alleges that Defendant DeGiancinto managed and controlled Defendants Axonic Preferred Equity Providers, Axonic Capital LLC and ACO Skyloft Manger LLC.

25.     Defendants Axonic Preferred Equity Providers, ACO Skyloft Manager LLC, Axonic Credit Opportunities Master Fund, LP, Axonic Capital LLC and Clayton DeGiancinto are referred to collectively as the "Axonic Defendants."  The Axonic Defendants have controlled the Trustee and Trust since May 2020.

## JURISDICTION AND VENUE

26.     Jurisdiction is conferred by §27 of the Securities Exchange Act of 1934 (the "Exchange Act").  The claims asserted herein arise under §§10(b) and 20(a) of the Exchange Act and Rule 10b-5 promulgated under §10 of the Exchange Act.   In addition, because this is a civil action arising under the laws of the United States, the Court has jurisdiction pursuant to 28 U.S.C. §1331.

27.     Venue in this district is proper pursuant to §27 of the Exchange Act. Many of the false or misleading statements were made in or issued from this district.

28.     The Nelson Partners and the Trustee's principal place of business are located in Orange County, California, and Defendant P. Nelson resides in Orange County, California.  Certain of the acts and conduct complained of herein, including the dissemination of materially false and misleading statements to the Investors, occurred in this district.

29.     In connection with the acts and conduct alleged in this complaint, Defendants, either directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails and interstate wire and telephone communications.

## BACKGROUND

30.     The Trust is a Delaware Statutory Trust formed to acquire a high-rise, student-housing apartment complex commonly known as SkyLoft, located near the

CLASS ACTION COMPLAINT
CASE NO.

University of Texas at Austin at 507 West 23rd Street, Austin, Texas (the "Trust Property").   Defendant NP Skyloft ST, LLC was the Signatory Trustee of the Trust, the Trustee, and Defendant NP Skyloft JV, LLC, in turn, was the managing member of the Trustee.  The Trust was governed by the Trust Agreement of NP SkyLoft, DST (the "Trust Agreement"), which each of Plaintiff and the other Class members signed.  Pursuant to the Trust Agreement, the Trustee (and, therefore, the managing member of the Trustee), managed the Trust.

31.     The Trust marketed the Interests to accredited investors over a 14-month period, ending in February 2020.  The Trust used the PPM dated December 19, 2018 and the Supplement dated March 2, 2019 to market the Interests to Plaintiff and the other Class Members.

32.     The PPM disclosed to Plaintiff and the other Class Members that, "[t]he investment objectives of the Trust are to acquire and manage the [Trust] Property to generate income with tax benefits, preserve principal and provide the potential for long-term growth."  The PPM projected that in years 1 and 2 of Plaintiff's and the other Class members' investment, the Trust would pay a 6.13% return to them which it projected would increase to 7.00% in years 9 and 10.  The PPM further disclosed that the Trust ultimately would sell the Trust Property and return to the Investors their investments and their proportionate share of the Trust Property's appreciation.

33.     The PPM disclosed that, in order to close the acquisition of the Trust Property prior to sufficient Interests being sold to finance the acquisition together with the proceeds of a UBS AG loan, the Trust**,** through Nelson Partners, might obtain capital from a "Preferred Equity Provider**.**"  If used, Nelson Partners would cause the Trust to use such capital to close the acquisition of the Trust Property. The PPM further disclosed in two separate sections that, "[i]f capital is provided by the Preferred Equity Provider, then upon the sale of Interests, the net proceeds, less
/////

CLASS ACTION COMPLAINT
CASE NO.

commissions and fees paid to broker dealers and their representatives, will be used to repay such capital."

34.     The PPM included a paragraph captioned "RISKS RELATED TO THE PREFERRED EQUITY," in which it made only the following disclosure as to the risk related to the Preferred Equity:

> If utilized, the provision of capital by the Preferred Equity Provider would allow the acquisition of the Property to close prior to the sale of sufficient Interests to raise the minimum required closing equity. If capital is provided by the Preferred Equity Provider, subject to limited exceptions, all net sales proceeds from the sale of Interests must be used to repay to the Preferred Equity Provider the capital it invested. If insufficient Interests are sold, the Preferred Equity Provider may not be fully repaid and there may be insufficient funds to pay the expenses, fees and commissions set forth in the Estimated Use of Proceeds (See "ESTIMATED USE OF PROCEEDS") that were not paid at the closing of the acquisition. If proceeds from the sale of Interests are not available to pay such expenses, fees and commissions, then the Trust may be required to use income from the Property to pay such items, reducing cash flow available to operate the Property and to pay distributions to the Investors.

35.     The Trust later issued the Supplement dated March 2, 2019 (the "Supplement").  The Supplement disclosed that (a) on February 26, 2019, the Trust acquired the Trust Property for $123,210,000 plus transaction costs and expenses (for a total of $132,124,000) and (b) "a preferred equity provider contributed $35,000,000 to the Trust, through Affiliates of the Trust, which capital was used to close the acquisition" of the Trust Property.  The Supplement further disclosed that "[t]hree special purpose entities, each owned by a separate investment fund managed by Axonic Capital, provided the preferred capital."  The Supplement collectively defined those special purpose entities as the "Preferred Equity Providers."

36.     The "Preferred Equity Providers" as referenced in the PPM are Defendants Axonic Preferred Equity Providers.

/////

CLASS ACTION COMPLAINT
CASE NO.

37.     The Supplement repeated the disclosure in the PPM that "[u]pon the sale of Interests, the net proceeds, less commissions and fees paid to broker dealers and their representatives, will be used to repay the capital contributed by the [Axonic] Preferred Equity Providers."

38.     The Supplement, however, failed to disclose that on February 26, 2019 – just four days before the Supplement was issued – the Axonic Preferred Equity Providers were admitted as "Special Members" into NP Skyloft JV, LLC, which is the managing member of the Trustee of the Trust, and thus had management control over the Trust.  The Axonic Preferred Equity Providers' admission to NP Skyloft JV, LLC was made pursuant to a Limited Liability Agreement of NP Skyloft JV, LLC dated February 26, 2019, the JV LLC Agreement, the existence of which the Supplement also failed to disclose.  Pursuant to the secret JV LLC Agreement, the Axonic Preferred Equity Providers' made their $35,000,000 capital contribution to NP Skyloft JV, LLC (which, again, is the managing member of the Trustee of the Trust) and, in exchange for the $35,000,000 capital contribution, the Axonic Preferred Equity Providers became "Special Members" of NP Skyloft JV, LLC and received "Special Member Interests" in NP Skyloft JV, LLC.  Such facts were concealed from the Investors.

39.     The secret JV LLC Agreement further required that NP Skyloft JV, LLC redeem the Axonic Preferred Equity Providers' Special Member Interests no later than February 25, 2020 (the "Mandatory Redemption").  This fact was concealed from the Investors.

40.     Pursuant to the secret JV LLC Agreement, NP Skyloft JV, LLC's failure to make the Mandatory Redemption on or before February 25, 2020 constituted a "Material Default" and gave the Axonic Preferred Equity Providers/Special Members (a) the right to an increased return on their capital contribution, (b) the right to immediately remove and replace the Managing Member of NP Skyloft JV, LLC (and to thereby control the Trustee and Trust), and (c) the

unilateral right and full power and authority to cause the sale of the Trust Property "to an independent third party on such terms and conditions as Special Member shall approve in the exercise of its sole and absolute discretion (a 'Forced Sale')." Such facts were concealed from the Investors.

41.     The Supplement entirely omitted the disclosure of this material information regarding the existence of the JV LLC Agreement, which gave the Axonic Preferred Equity Providers/Special Members the ability to take control of the Trustee and Trust and force the sale of the Trust Property in their sole and absolute discretion.  To make their deception and concealment worse, such provisions contradict the terms of the Trust Agreement.  The Trust Agreement, which was disclosed in the PPM and Supplement and signed by the Investors, imposed on the Trustee "a duty to conserve and protect the Trust Property for the benefit of the Investors and is hereby authorized and directed to take any and all necessary actions on behalf of the Trust, or to cause the Trust to take the same, to conserve and protect the Trust Property for the benefit of the Investors …." Defendants' deception left the Investors completely in the dark about the possibility that the Preferred Equity Provider could sell the Trust Property.[1]

42.     The Axonic Preferred Equity Providers, as controlled and managed by Defendants Axonic Capital LLC and DeGiancinto, actively participated in the concealment from Plaintiff and the other Class members of the JV LLC Agreement and the sweeping rights the JV LLC Agreement granted the Axonic Preferred Equity Providers/Special Members.  Indeed, the JV LLC Agreement (signed by the Axonic Preferred Equity Providers) contains the following confidentiality provision: "Managing Member agrees not to disclose or permit the disclosure of any of the

---

[1] While the concealed JV LLC Agreement gave such rights to the Axonic Preferred Equity Providers/Special Members, Plaintiff does not concede that they could exercise those rights without violating the Trustee's duty in the Trust Agreement to "to conserve and protect the Trust Property for the benefit of the Investors … to cause the Trust to take the same, to conserve and protect the Trust Property for the benefit of the Investors."

terms of this Agreement or any other documents executed in connection with this Agreement or the Preferred Equity Investment (collectively, 'Confidential Information') . . ..''  Thus, the Axonic Preferred Equity Providers, as controlled and managed by Defendants Axonic Capital LLC and DeGiancinto, prohibited the disclosure of this material information to Plaintiff and the other Class members.

43.     The only information disclosed to Plaintiff and the other Class Members in the PPM or the Supplement contradicted the JV LLC Agreement and the sweeping rights granted to the Axonic Preferred Equity Providers.

44.     First, the PPM and Supplement disclosed that the Trust would use the proceeds from the sale of the Interests to repay the Axonic Preferred Equity Providers.

45.     Second, the PPM's risk factor regarding the Preferred Equity Provider only warned of the possibility that cash flow available to operate the Trust Property and to pay distributions to Investors may be reduced.

46.     Third, Section 7.02 of the Trust Agreement, which was attached to both the PPM and the Supplement and which Plaintiff and the other Class members signed when they purchased their Interests, imposed on the Trustee a "a duty to conserve and protect the Trust Property for the benefit of the Investors and … to take any and all necessary actions on behalf of the Trust, or to cause the Trust to take the same, to conserve and protect the Trust Property for the benefit of the Investors …."

47.     Fourth, Section 9.02 of the Trust Agreement provided that, if "the Signatory Trustee determines that the Investors are at risk of losing all or a substantial portion of their investment in the Interests, … the Signatory Trustee shall, in compliance with such conditions precedent and other requirements as may be set forth in the Loan Documents (if still in force), terminate the Trust and distribute the Trust Property to the Investors in the manner provided in Section 9.03."  Section 9.03(a) provides, if a loan secured by the first mortgage or trust deed

on the Trust Property remains outstanding, then the Signature Trustee must transfer the Trust Property to a Delaware limited liability company and convert Plaintiff's and the other Class members' ownership interests into equivalent membership interests in the limited liability company.

48.    That the JV LLC Agreement was not disclosed was no accident or oversight by the parties.  Instead, the Nelson Defendants and Axonic Defendants expressly agreed to keep the agreement and its terms secret.

49.    Section 13.20 of the JV LLC Agreement provides that "***Managing Member agrees not to disclose or permit the disclosure of any of the terms of this Agreement or any other documents executed in connection with this Agreement or the Preferred Equity Investment*** …."  The Nelson Defendants and Axonic Defendants further specifically addressed what could be disclosed to the Investors. Section 13.20 carves out from the secrecy provisions disclosures "reasonably necessary to comply with federal or state securities laws."  But they expressly limited such disclosures to "the tax treatment and tax structure of the transaction contemplated by this Agreement and all materials of any kind (including opinions or other tax analyses) that are provided to it relating to such tax treatment and tax structure."  To underscore the intent to keep the JV LLC Agreement and its terms secret even in the face of the need to comply with the securities laws, the Nelson Defendants and Axonic Defendants agreed that "[f]or the avoidance of doubt, this authorization is not intended to permit disclosure of the names of, or other identifying information regarding, the participants in the transaction, or of any information or the portion of any materials not relevant to the tax treatment or tax structure of the transaction."  Thus, ***even for securities law compliance the Nelson Defendants and Axonic Defendants agreed to only provide material "relevant to the tax treatment or tax structure of the transaction."  The existence of the agreement and its the terms could not be disclosed to the Investors, including the Mandatory Redemption and Forced Sale provisions.***

50.     The Trust eventually raised $75,480,000 from the sale of the Interests to Plaintiff and the other Class members and borrowed $66,125,000 from UBS AG, for a total of $141,605,000 in capital.  The Trust purchased the Trust Property for $123,210,000 plus transaction fees, for a total of $132,124,000.

51.     Thus, the Trust raised more than sufficient capital from the sale of the Interests to repay the Axonic Preferred Equity Providers for their $35,000,000 bridge capital contribution, as the PPM and Supplement disclosed would occur.

52.     Unbeknownst to Plaintiff and the other Class members, and contrary to the representations in the PPM and Supplement, Nelson Partners failed to cause the Trust to use the proceeds of the sale of the Interests to repay the $35,000,000 capital contribution made by the Axonic Preferred Equity Providers.

53.     Also unbeknownst to Plaintiff and the other Class members, on May 5, 2020, the Axonic Preferred Equity Providers/Special Members exercised their secret rights under the JV LLC Agreement arising from NP Skyloft JV, LLC's failure to make the Mandatory Redemption.  The Axonic Preferred Equity Providers/Special Members removed NP Skyloft Equity, LLC as the Managing Member of NP Skyloft JV, LLC and replaced it with ACO Skyloft Manager LLC, another Axonic Capital entity.  By replacing the Managing Member of NP Skyloft JV, LLC, which, in turn, is the Managing Member of the Trustee of the Trust, the Axonic Preferred Equity Providers/Special Members took over control of the Trust.

54.     In late December 2020, Plaintiff and the other Class members were shocked to receive a letter, dated December 22, 2020, from a law firm named, Cain & Skarnulis PLLC.  The letter represented that law firm was writing "on behalf of the Special Members of NP Skyloft JV, LLC, the sole member of the Signature Trustee."  The letter told the Plaintiff and the other Class Members that, "[p]ursuant to Section 5.03 of the Trust Agreement, you are hereby notified that the Signature Trustee intends to cause the Trust to sell the [Trust] Property in a simultaneous sign-and-close transaction."  No other information was provided about the proposed sale

CLASS ACTION COMPLAINT
CASE NO.

of the Trust Property and the letter failed to name the "Special Members."

55.     In late January 2021, Plaintiff and the other Class members received another letter from Cain & Skarnulis PLLC, dated January 22, 2021.  The letter represented that the Trustee sold the Trust Property to TCG Skyloft Owner, LLC ("TCG").  The letter did not disclose the amount received by the Trust from the sale of the Trust Property.

56.     While the December 22, 2020 letter to Plaintiff and the other Class Members represented the Special Members, as sole members of the Trustee, "intended to cause the Trust to sell the [Trust] Property," the sale of the Trust Property had already occurred.  Through her investigation, Plaintiff has obtained a copy of a Special Warranty Deed transferring the Trust Property from the Trust to TCG (the "Deed").  While the Deed represents that it was signed on December 28, 2020, the Notary Public, who notarized Defendant DeGiacinto's signature on the Deed, did so on December 7, 2020 – weeks before the December 22, 2020 letter.

57.     Further, while the January 22, 2021 letter to Plaintiff and the other Class members represented that the Trust Property was sold to "an independent third party," TCG, the Memorandum of Assumption and Release Agreement signed in connection with the sale of the Trust Property states that TCG's mailing address is "c/o Axonic Capital LLC, 520 Madison Avenue, 42nd Floor, New York, New York 10022."  Moreover, various Axonic entities guaranteed the loans assumed by TCG.

58.     The Trustee, as managed and controlled by the Axonic Defendants, has not caused the Trust to make any distributions to Plaintiff and the other Class members from the proceeds of the sale of the Trust Property.  Plaintiff is informed and believes that, by controlling the Trustee and causing the Trust to sell the Trust Property, the Axonic Defendants caused Plaintiff and the other Class members to lose their entire investment of $75,480,000.

/////

/////

CLASS ACTION COMPLAINT
CASE NO.

# CLASS ALLEGATIONS

59.     Plaintiff brings this action on behalf of herself and as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3), consisting of all persons and entities who purchased or acquired the Interests in the Trust and who were damaged thereby (the "Class").  Excluded from the Class are: (a) Defendants; (b) members of the immediate families of the individual Defendants; (c) the subsidiaries and affiliates of Defendants; (d) any person who is an officer, director or controlling person of any Defendant; (e) any entity in which any Defendant has a controlling interest; (f) Defendants' directors' and officers' liability insurance carriers, and any affiliates or subsidiaries thereof; and (g) the legal representatives, heirs, successors or assigns of any such excluded party.

60.     Plaintiff is informed and believes and thereon on alleges that the Class consists of 261 Investors, making joinder of the each of the Class members impracticable.

61.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal and state law complained of herein.

62.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests that are adverse or antagonistic to the Class.

63.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are: (a) whether the federal and state securities laws were violated by Defendants' acts as alleged herein; (b) whether the PPM and Supplement disseminated to the Class contained material misstatements or omitted to state material information; (c) whether Defendants committed common law fraud and aided and abetted the commission of

fraud; and (d) whether the members of the Class have sustained damages as a result of the misconduct complained of herein, and, if so, the proper measure thereof.

64.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  There will be no difficulty in the management of this case as a class action.

**PRESUMPTION OF RELIANCE**

65.     Plaintiff is entitled to a presumption of reliance under *Affiliated Ute v. United States*, 406 U.S. 128 (1972), because the claims asserted herein against Defendants are primarily predicated upon omissions of material fact for which there was a duty to disclose.

**FIRST CLAIM FOR RELIEF**
**for**
**VIOLATION OF SECTION 10(b) OF THE EXCHANGE ACT**
**Against the Nelson Defendants and the Axonic Defendants**

66.     Plaintiff incorporates and re-alleges herein by this reference paragraphs 1 to 65, inclusive, as though fully set forth at length.

67.     Plaintiff is informed and believes and thereon alleges that the Nelson Defendants and the Axonic Defendants reviewed, approved, and participated in the drafting of the PPM's and the Supplement's representations about the Preferred Equity and Preferred Equity Provider.  Plaintiff is further informed and believes and thereon alleges that the Nelson Defendants and the Axonic Defendants, as a result of their agreement in the JV LLC Agreement to keep the JV LLC Agreement and its terms confidential, determined that the PPM and the Supplement would not disclose the existence of the JV LLC Agreement and its terms.  Therefore, the Nelson Defendants and the Axonic Defendants are responsible for the omissions in the PPM and the Supplement.

68.     The JV LLC Agreement and its terms, which were omitted from the PPM and Supplement, were material in that any reasonable investor would have

considered such information important in deciding whether to invest in the Trust and such information would have materially altered the total mix of information available to the Investors through the PPM and the Supplement.

69. The PPM and Supplement, which omitted the material facts, were provided to the Investors in connection with the purchase or sale of securities, the Interests in the Trust.

70. Thus, the Nelson Defendants and the Axonic Defendants violated §10(b) and Rule 10b-5 in that they (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material facts or omitted to state material facts; and (c) engaged in acts, practices, and a course of business that operated as a fraud or deceit upon Plaintiff and the other Class members in connection with their Investment in the Trust. Plaintiff and the Class have suffered damages in that, as a result of the Nelson Defendants and Axonic Defendants' wrongful conduct alleged herein, their Interests, for which they paid a total of approximately $75,480,000 million, are now worthless.

## SECOND CLAIM FOR RELIEF
### for
## CONTROL PERSON LIABILITY UNDER SECTION 20(a) OF THE EXCHANGE ACT
### Against the Trustee, the Nelson Defendants and the Axonic Defendants

71. Plaintiff incorporates and re-alleges herein by this reference paragraphs 1 to 65, inclusive, as though fully set forth at length.

72. The Nelson Defendants, Axonic Defendants and the Trustee acted as controlling persons of the Trust within the meaning of §20(a) of the Exchange Act as alleged herein. By virtue of their ownership and contractual rights, substantial participation in and/or awareness of the Trust's operations and/or intimate knowledge of the material misstatements and omissions in the PPM and Supplement disseminated to the Investors, the Nelson Defendants, Axonic Defendants and the Trustee had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Trust, including the content and

dissemination of the various statements which Plaintiff contends are false and/or misleading. The Nelson Defendants, Axonic Defendants and the Trustee were provided with or had unlimited access to copies of the PPM and the Supplement alleged by Plaintiff to be misleading prior to and/or shortly after the PPM and Supplement were issued and had the ability to prevent the issuance of the omissions from the PPM and Supplement or cause the PPM and Supplement to be corrected to include the omitted information.

73.     In particular the Nelson Defendants, Axonic Defendants and the Trustee each had direct and supervisory involvement in the day-to-day operations of the Trust, particularly with respect to the capital contribution by the Axonic Preferred Equity Providers, the drafting and negotiation of the JV LLC Agreement (including the confidentiality requirement imposed therein) and the sweeping rights provided to the Axonic Preferred Equity Providers pursuant thereto, the Trust's failure to use the proceeds raised from Plaintiff and the Class Members to repay/redeem the Axonic Preferred Equity Providers capital contribution, the Axonic Preferred Equity Providers/Special Members' exercise of their right to replace the managing member of the Trustee, the sale of the Trust Property to TCG, and the distribution of the proceeds from such sale, and, therefore, are presumed to have had the power to control or influence the particular transactions giving rise to the securities violations alleged herein, and exercised the same.

74.     As alleged above, the Trust violated §10(b) and Rule 10b-5 in that it (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material facts or omitted to state material facts; or (c) engaged in acts, practices, and a course of business that operated as a fraud or deceit upon Plaintiff and the other Class members in connection with their transactions with the Trust. Plaintiff and the Class have suffered damages in that, as a result of Trust's wrongful conduct alleged herein, their Interests, for which they paid a total of approximately $75,480,000 million, are now worthless.

75.     By virtue of their positions as controlling persons of the Trust, Defendants Nelson Defendants, Axonic Defendants and the Trustee are liable pursuant to §20(a) of the Exchange Act for the violations committed by the Trust. As a direct and proximate result of the Trust's wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Interests in the Trust in the amount of $75,480,000.

**THIRD CLAIM FOR RELIEF**
**for**
**VIOLATION OF CALIFORNIA CORPORATIONS CODE SECTIONS 25401 AND 25501**
**Against the Nelson Defendants and the Axonic Defendants**

76.     Plaintiff incorporates and re-alleges herein by this reference paragraphs 1 to 65, inclusive, as though fully set forth at length.

77.     Plaintiff is informed and believes and thereon alleges that the Nelson Defendants and the Axonic Defendants reviewed, approved, and participated in the drafting of the PPM's and the Supplement's representations about the Preferred Equity and Preferred Equity Provider.  Plaintiff is further informed and believes and thereon alleges that the Nelson Defendants and the Axonic Defendants, as a result of their agreement in the JV LLC Agreement to keep the JV LLC Agreement and its terms confidential, determined that the PPM and the Supplement would not disclose the existence of the JV LLC Agreement and its terms.  Therefore, the Nelson Defendants and the Axonic Defendants are responsible for the omissions in the PPM and the Supplement.

78.     The JV LLC Agreement and its terms, which were omitted from the PPM and Supplement, were material in that any reasonable investor would have considered such information important in deciding whether to invest in the Trust and such information would have materially altered the total mix of information available to the Investors through the PPM and the Supplement.

/////

/////

CLASS ACTION COMPLAINT
CASE NO.

79.     The PPM and Supplement, which omitted the material facts, were provided to the Investors in connection with the purchase or sale of securities, the Interests in the Trust.

80.     Thus, the Nelson Defendants and the Axonic Defendants violated California Corporations Code §25401 in that they omitted material facts from the PPM and Supplement in connection with the offer and sale of the Interests to Plaintiff and the other Class members.  Plaintiff and the Class have suffered damages in that, as a result of the Nelson Defendants and Axonic Defendants' wrongful conduct alleged herein, their Interests, for which they paid a total of approximately $75,480,000 million, are now worthless.  Plaintiff, on her own behalf and on behalf of the Class, sues for rescission and damages.

**FOURTH CLAIM FOR RELIEF**
**for**
**VIOLATION OF CALIFORNIA CORPORATIONS CODE SECTION 25504**
**Against All Defendants**

81.     Plaintiff incorporates and re-alleges herein by this reference paragraphs 1 to 65, inclusive, as though fully set forth at length.

82.     The Nelson Defendants, Axonic Defendants and Trustee directly and indirectly controlled the Trust.  As set forth in this Complaint, the Trust violated California Corporations Code §25401, and is liable under California Corporations Code §25501, because it offered for sale and sold in the State of California the Interests by means of written communications which contained untrue statements of a material fact and omitted to state material facts.

83.     As control persons of the Trust, under California Corporation Code §25504, the Nelson Defendants, the Axonic Defendants and the Trustee are liable jointly and severally with and to the same extent as the Trust for the Trust's violations of California Corporation Code §25401 and liability under California Corporations Code §25501.

/////

CLASS ACTION COMPLAINT
CASE NO.

84.     Plaintiff and the other members of the Class are persons who purchased the Interests from the Trust.  Plaintiff, on her own behalf and on behalf of the Class, sues for rescission and damages.

**FIFTH CLAIM FOR RELIEF**
**for**
**VIOLATION OF CALIFORNIA CORPORATIONS CODE SECTION 25504.1**
**Against All Defendants**

85.     Plaintiff incorporates and re-alleges herein by this reference paragraphs 1 to 65, inclusive, as though fully set forth at length.

86.     As set forth in this Complaint, the Trust violated California Corporations Code §25401, and is liable under California Corporations Code §25501, because it offered for sale and sold in the State of California the Interests by means of written communications which contained untrue statements of a material fact and omitted to state material facts.

87.     The Nelson Defendants, Axonic Defendants and Trustee materially assisted the Trust in violating California Corporations Code §25401 with the intent to deceive and defraud Plaintiff and the other Class members and, under California Corporations Code §25504.1, are liable jointly and severally with and to the same extent as the Trust for the Trust's violations of California Corporation Code §25401.

88.     Plaintiff and the other members of the Class are persons who purchased the Interests from the Trust.  Plaintiff, on her own behalf and on behalf of the Class, sues for rescission and damages.

**SIXTH CLAIM FOR RELIEF**
**for**
**FRAUD**
**Against All Defendants**

89.     Plaintiff incorporates and re-alleges herein by this reference paragraphs 1 to 65, inclusive, as though fully set forth at length.

90.     The Nelson Defendants, Axonic Defendants and the Trustee intentionally misrepresented to Plaintiff and the Class members that the Trust would

use the proceeds from the sale of the Interests to repay any bridge capital contribution.  The Nelson Defendants, Axonic Defendants and Trustee intentionally failed to disclose to Plaintiff and the Class members the existence of the JV LLC Agreement and the sweeping rights granted to the Preferred Equity Providers/Special Members under the JV LLC Agreement.

91.     The Nelson Defendants, Axonic Defendants and the Trustee intended for Plaintiff and the other Class members to rely on their misrepresentations and omissions alleged herein.

92.     Plaintiff and the Class members were unaware of the falsity of the Nelson Defendants, Axonic Defendants' and Trustee's misrepresentations alleged herein.

93.     Plaintiff and the Class members reasonably relied on the Nelson Defendants, the Axonic Defendants and the Trustee's misrepresentations alleged herein.

94.     If Plaintiff and the other Class members had known of the material misrepresentations in, and material information omitted from, the PPM and Supplement alleged herein, they would not have purchased the Interests.

95.     As a proximate result of the Nelson Defendants, the Axonic Defendants and the Trustee's deception, Plaintiff and the Class members have been damaged in amounts to be determined at trial.

96.     The Nelson Defendants, the Axonic Defendants and the Trustee acted with the intent to cause injury to Plaintiff and the Class members.  The Nelson Defendants, the Axonic Defendants and the Trustee further engaged in despicable conduct carried out by them with a willful and conscious disregard of the rights of Plaintiff and the Class members.  The Nelson Defendants, the Axonic Defendants and the Trustee thereby subjected Plaintiff and the other Class members to cruel and unjust hardship.  The Nelson Defendants, the Axonic Defendants and the Trustee acted with deceit and concealed material facts from Plaintiff and the Class members,

including by misrepresenting to Plaintiff and the Class members that the Trust would repay the preferred equity capital contribution with the proceeds from the sale of the Interests, concealing the JV LLC Agreement and the sweeping rights granted to the Axonic Preferred Equity Providers pursuant to the JV LLC Agreement, concealing that the Axonic Preferred Equity Providers had taken management control of the Trustee, concealing that, when the December 22, 2020 letter was sent to the Investors, the Trustee had already fully negotiated an agreement to sell the Trust Property to TCG, and concealing that TCG is related to the Axonic Defendants.  The Nelson Defendants, the Axonic Defendants and the Trustee made these material misrepresentations and omissions to induce Plaintiff and the Class members to purchase the Interests and then to prevent Plaintiff and the Class Members from taking action to stop the sale of the Trust Property.  Pursuant to California Civil Code section 3294, such acts of oppression, fraud, and/or malice entitle the Plaintiff and the Class members, in addition to the actual damages, to an award of punitive or exemplary damages for the sake of making an example of the Nelson Defendants, Axonic Defendants and Trustee and by way of punishing the Nelson Defendants, Axonic Defendants and Trustee.

## SEVENTH CLAIM FOR RELIEF
### for
## NEGLIGENT MISREPRESENTATION
### Against the Nelson Defendant and the Trustee

97.     Plaintiff incorporates and re-alleges herein by this reference paragraphs 1 to 65, inclusive, as though fully set forth at length.

98.     The Nelson Defendants and the Trustee misrepresented to Plaintiff and the other Class members in the PPM and Supplement that the Trust would repay the preferred equity capital contributions with the proceeds from the sale of the Interests.  The Nelson Defendants and the Trustee had no reasonable grounds for believing these misrepresentations to be true and intended to induce Plaintiff and the other Class members' reliance on the misrepresentations by purchasing the Interests.

Plaintiff and the other Class members were ignorant of the truth and justifiably relied on these misrepresentations by purchasing the Interests, as they had no reason not to believe the representations at the time they were made.

99.     The Nelson Defendants and the Trustee had a legal duty to disclose to Plaintiff and the Class Members the existence of the JV LLC Agreement and the sweeping rights granted to the Axonic Preferred Equity Providers/Special Members under the JV LLC Agreement.  The Nelson Defendants and the Trustee breached these duties by failing to disclose any of this material information to Plaintiffs and the Class members.  Plaintiff and the Class members were unaware of the material information that the Nelson Defendants and Trustee concealed from them.  Plaintiff and the Class members were damaged by the Nelson Defendants and the Trustee's failure to disclose this material information to them.  Had the Nelson Defendants and the Trustee fulfilled their legal disclosure obligations and disclosed the existence of the JV LLC Agreement and the sweeping rights granted to the Axonic Preferred Equity Providers/Special Members under the JV LLC Agreement, Plaintiff and the Class members would not have purchased the Interests.

100.     As a proximate result of Nelson Defendants and the Trustee's negligent misrepresentations and omissions, Plaintiff and the Class members were damaged in an amount to be determined at trial.

**EIGHTH CLAIM FOR RELIEF**
**for**
**CONSPIRACY TO COMMIT FRAUD**
**Against All Defendants**

101.     Plaintiff incorporates and re-alleges herein by this reference paragraphs 1 to 65, inclusive, as though fully set forth at length.

102.     Plaintiff is informed and believe and thereon allege that in connection with the execution of the JV LLC Agreement, Defendants did knowingly and willfully conspire and agree among themselves to: (1) misrepresent to Plaintiff and the other Class Members that the Trust would use the $75,480,000 in proceeds from

the sale of the Interests, in part, to repay the $35,000,000 in bridge capital provided by the Axonic Preferred Equity Providers and (2) to conceal from Plaintiff and the other Class Members the execution of the JV LLC Agreement and the sweeping rights granted to the Axonic Preferred Equity Providers.

103.   In furtherance of said conspiracy and agreement, the aforementioned Defendants engaged in fraudulent representations, omissions and concealment of facts, acts of cover-up and statements calculated to obtain Plaintiff and the other Class members' $75,480,000 in funds for the benefit of Defendants and as detailed in the Complaint.  In particular, the conspiracy among Defendants is reflected in the secret JV LLC Agreement that the Nelson Defendants and the Axonic Defendants agreed to keep confidential.

104.   All of the actions of Defendants as alleged in the preceding paragraphs of the Complaint, incorporated herein by reference, were in violation of the rights of Plaintiff and the other Class members and committed in furtherance of the aforementioned conspiracies and agreements.  Moreover, each of the Defendants lent aid and encouragement and knowingly financed, ratified, and adopted the acts of the other.  As a proximate result of the wrongful acts herein alleged, Plaintiffs and the other Class members have suffered significant damage, which is estimated to be a minimum of $75,480,000, or otherwise determined at trial.

105.   Defendants' acts constituted malicious conduct which was carried on by Defendants with willful and conscious disregard for Plaintiff's and the other Class members' rights with the intention of misappropriating Plaintiff's and the other Class members $75,480,000 in funds invested in the Trust or otherwise causing injury and was despicable conduct that subjected Plaintiff and the other Class members to a cruel and unjust hardship so as to justify an award of exemplary and punitive damages. Pursuant to California Civil Code section 3294, such acts of oppression, fraud, and/or malice entitle the Plaintiff and the Class members, in

/////

CLASS ACTION COMPLAINT
CASE NO.

addition to the actual damages, to an award of punitive or exemplary damages for the sake of making an example of Defendants and by way of punishing Defendants.

WHEREFORE, Plaintiff request judgment as follows:

A.      As to the First Claim for Relief, an award of compensatory damages in favor of Plaintiff and the other members of the Class against the Nelson Defendants and Axonic Defendants, jointly and severally, for all damages sustained as a result of the Nelson Defendants and Axonic Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

B.      As to the Second Claim for Relief, an award of compensatory damages in favor of Plaintiff and the other members of the Class against the Trustee, Nelson Defendants and Axonic Defendants, jointly and severally, for all damages sustained as a result of the Trustee, Nelson Defendants and Axonic Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

C.      As to the Third Claim for Relief, an order of recission of the Interests together with the return by the Nelson Defendants and Axonic Defendants of all consideration Plaintiff and the other Class members paid for the Interests (totaling $75,480,000), plus interest, less the amount of any income received on the Interests by Plaintiff and the other Class members;

D.      As to the Fourth Claim for Relief, an order of recission of the Interests together with the return by the Trustee, Nelson Defendants and Axonic Defendants of all consideration Plaintiff and the other Class members paid for the Interests (totaling $75,480,000), plus interest, less the amount of any income received on the Interests by Plaintiff and the other Class members;

E.      As to the Fifth Claim for Relief, an order of recission of the Interests together with the return by the Trustee, Nelson Defendants and Axonic Defendants of all consideration Plaintiff and the other Class members paid for the Interests (totaling $75,480,000), plus interest, less the amount of any

income received on the Interests by Plaintiff and the other Class members;

F.      As to the Sixth Claim for Relief:

      1.      An award of compensatory damages in favor of Plaintiff and the other members of the Class against the Nelson Defendants, Axonic Defendants and Trustee, jointly and severally, for all damages sustained as a result of the Nelson Defendants, Axonic Defendants and Trustee's wrongdoing, in an amount to be proven at trial, including interest thereon;

      2.      An award of punitive damages in an amount sufficient to punish and make an example of the Nelson Defendants, Axonic Defendants and Trustee;

G.      As to the Seventh Claim for Relief, an award of compensatory damages in favor of Plaintiff and the other members of the Class against the Nelson Defendants, Axonic Defendants and Trustee, jointly and severally, for all damages sustained as a result of the Nelson Defendants, Axonic Defendants and Trustee's wrongdoing, in an amount to be proven at trial, including interest thereon;

H.      As to the Eighth Claim for Relief:

      1.      An award of compensatory damages in favor of Plaintiff and the other members of the Class against the Nelson Defendants, Axonic Defendants and Trustee, jointly and severally, for all damages sustained as a result of the Nelson Defendants, Axonic Defendants and Trustee's wrongdoing, in an amount to be proven at trial, including interest thereon;

      2.      An award of punitive damages in an amount sufficient to punish and make an example of the Nelson Defendants, Axonic Defendants and Trustee;

I.      As to all Claims for Relief, a temporary restraining order and preliminary injunction:

1.    Restraining and enjoining the Nelson Defendants, their employees and all those acting in concert with them from dissipating any of the proceeds received from the sale of the Interests in the Trust;

2.    Imposing a constructive trust on the proceeds received from the sale of the Interests in the Trust and any assets or other property into which such proceeds have been transmuted;

3.    Restraining and enjoining the Axonic Defendants, their employees and all those acting in concert with them from dissipating any of the funds paid to them in repayment of the Preferred Equity;

4.    Imposing a constructive trust on any of the funds paid to the Axonic Defendants in repayment of the Preferred Equity and any assets or other property into which such proceeds have been transmuted;

G.    As to all Claims for Relief:

1.    An order allowing this this class action is a proper class action and certifying Plaintiff as class representative under Rule 23 of the Federal Rules of Civil Procedure;

2.    An award of attorneys' fees and costs to the extent permitted by law or contract; and

3.    Such other and further relief as the Court deems just and appropriate.

Dated: February 25, 2021

**BROWNLIE HANSEN LLP**

ROBERT W. BROWNLIE
Robert.brownlie@brownliehansen.com
Attorneys for Plaintiff
SANDRA PARZIALE, as co-trustee of
the Parziale Family Trust

CLASS ACTION COMPLAINT
CASE NO.

1

## DEMAND FOR JURY TRIAL

2

Pursuant to Local Rule 38-1 of the Local Rules of the United States District

3

Court for the Central District of California, Plaintiff hereby demands a trial by jury.

4

Dated: February 25, 2021          **BROWNLIE HANSEN LLP**

5

6

7

ROBERT W. BROWNLIE

8

Robert.brownlie@brownliehansen.com
Attorneys for Plaintiff

9

SANDRA PARZIALE, as co-trustee of
the Parziale Family Trust

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT
CASE NO.