TUCKER ELLIS LLP
Matthew I. Kaplan (SBN 177242)
matthew.kaplan@tuckerellis.com
515 South Flower Street, Forty-Second Floor
Los Angeles, CA 90071
Telephone: 213.430.3400
Facsimile: 213.430.3409

Attorney for Defendants
PATRICK NELSON and NELSON PARTNERS, LLC

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SANDRA PARZIALE, as co-trustee of the Parziale Family Trust, on behalf of herself and all others similarly situated,

Plaintiff,

v.

PATRICK NELSON, et al.,

Defendants.

Case No. 2:21-cv-01803-CBM (JEMx)

Assigned to the Hon. Consuelo B. Marshall

**NELSON DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**

Date: June 22, 2021
Time: 10:00 a.m.
Dept.: Courtroom 8B

Complaint Filed: February 25, 2021

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT, on June 22, 2021, at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 8B of the above-entitled Court, located at 350 W. 1st Street, Los Angeles, California 90012, defendants Patrick Nelson and Nelson Partners, LLC (the "Nelson Defendants") will and hereby does move this Court to dismiss Plaintiff Sandra Parziale's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6), 12(b)(7), 9(b), and the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 78u-4, on the grounds that the Complaint fails to state

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

a claim upon which relief can be granted, fails to join a necessary and indispensable party, and fails to plead with particularity allegations sounding in fraud.

This motion is based upon this Notice of Motion and Motion to Dismiss Complaint, the attached Memorandum of Points and Authorities, the pleadings, papers, and documents on file in this matter, and such further and other evidence and argument that may be presented at or before the hearing on this motion.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on May 3, 2021 via e-mail and continued through May 12, 2021 when the Nelson Defendants provided Plaintiff's counsel with a draft of their motion to dismiss for discussion and when, on May 17, 2021, counsel for the parties spoke on the telephone and Plaintiff's Counsel confirmed Plaintiff's intent to oppose the motion.

DATED: May 17, 2021

TUCKER ELLIS LLP

By: */s/ Matthew I. Kaplan*
Matthew I. Kaplan
matthew.kaplan@tuckerellis.com
Attorney for Defendants
PATRICK NELSON and NELSON PARTNERS, LLC

## TABLE OF CONTENTS

Page

I. INTRODUCTION ..... 7

II. STATEMENT OF FACTS ..... 8

III. APPLICABLE LEGAL STANDARD ..... 9

IV. LAW AND ARGUMENT ..... 10

A. The Risks of the Skyloft Investment Were Disclosed; There Were No Actionable Misrepresentations As a Matter of Law ..... 10

B. Plaintiff Failed to Join NP SkyLoft DST, An Indispensable Party ..... 13

1. NP SkyLoft, DST Is A Necessary Party ..... 14

C. Plaintiff Fails to Plead Her Claim of Fraud With Specificity Required Under Rule 9(b) ..... 18

V. CONCLUSION ..... 19

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*
556 U.S. 662 (2009) .......... 9

*Bakia v. County of Los Angeles*
687 F.2d 299 (9th Cir. 1982) .......... 14

*Bell Atl. Corp. v. Twombly*
550 U.S. 544 (2007) .......... 9

*Biagro W. Sales Inc. v. Helena Chem. Co.*
160 F. Supp. 2d 1136 (E.D. Cal. 2001) .......... 15

*Comer v. Micor, Inc.*
436 F.3d 1098 (9th Cir. 2006) .......... 17

*Conley v. Gibson*
355 U.S. 41, 78 S. Ct. 99 (1957) .......... 9

*Dawavendewa v. Salt River Project Agr. Imp. & Power Dist.*
276 F.3d 1150 (9th Cir. 2002) .......... 13, 15

*E.E.O.C. v. Peabody W. Coal Co.*
610 F.3d 1070 (9th Cir. 2010) .......... 13

*E.E.O.C. v. Peabody W. Coal Co.*
400 F.3d 774 (9th Cir. 2005) .......... 13, 14

*E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates*
269 F.3d 187 (3d Cir. 2001) .......... 17

*Fidelity Mortg. Corp. v. Seattle Times Co.*
213 F.R.D. 573 (W.D. Wash, 2003) .......... 18

*In re GlenFed Sec. Litig.*
42 F.3d 1541 (9th Cir. 1994) .......... 18

*Jackson v. Fischer*
WL 6732872 (N.D. Cal. 2013) .......... 10

*Kescoli v. Babbitt*
101 F.3d 1304 (9th Cir. 1996) .......... 15

*Konopasek v. Ten Associates, LLC*
WL 6177249 (C.D. Cal., Oct. 22, 2018) .......... 18

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

*Makah Indian Tribe v. Verity*
910 F.2d 555 (9th Cir. 1990) .......... 14

*McShan v. Sherrill*
283 F.2d 462 (9th Cir. 1960) .......... 14

*Mundi v. Union Security Life Ins. Co.*
555 F.3d 1042 (9th Cir. 2009) .......... 17

*Paiute-Shoshone Indians of Bishop Cmty. of Bishop Colony, Cal. v. City of Los Angeles*
637 F.3d 993 (9th Cir. 2011) .......... 14

*Quileute Indian Tribe v. Babbitt*
18 F.3d 1456 (9th Cir. 1994) .......... 13

*Shermoen v. United States*
982 F.2d 1312 (9th Cir. 1992) .......... 10

*Swartz v. KPMG LLP*
476 F.3d 756 (9th Cir. 2007) .......... 10

*United States v. Ritchie*
342 F.3d 903 (9th Cir. 2003) .......... 8

*Vess v. Ciba Geigy Corp. USA*
317 F.3d 1097 (9th Cir. 2003) .......... 10, 18

*Walling v. Beverly Enterprises*
476 Fed.2d 393 (9th Cir.1973) .......... 18

*Wash. Mut. Fin. Group, LLC v. Bailey*
364 F.3d 260 (5th Cir. 2004) .......... 17

**Statutes**

15 U.S.C. § 78u-4 .......... 7

**Other Authorities**

Private Securities Litigation Reform Act of 1995 (the “PSLRA”), .......... 7

**Rules**

Rules of Civil Procedure 12(b)(6) .......... 7, 8, 9

Rules of Civil Procedure 12(b)(7) .......... 7, 10, 13

Rules of Civil Procedure 19(a) .......... 14, 15

Rules of Civil Procedure 19(a)(1)(A) .......... 13

Rules of Civil Procedure 19(a)(1)(B) .......... 13

Rules of Civil Procedure 19(b) .......... 14

Rules of Civil Procedure 9(b) .......... 7, 18, 19

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

6
NELSON DEFENDANTS' MOTION TO DISMISS COMPLAINT

Tucker Ellis LLP
Chicago ◆ Cleveland ◆ Columbus ◆ Los Angeles ◆ San Francisco ◆ St. Louis

**MEMORANDUM OF POINTS AND AUTHORITIES**

Defendants Patrick Nelson and Nelson Partners, LLC (together, the "Nelson Defendants")[1] move to dismiss Plaintiff Sandra Parziale's Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6), 12(b)(7), 9(b), and the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. § 78u-4.

## I. INTRODUCTION

The Confidential Private Placement Memorandum dated December 19, 2018 (the "PPM") and the Supplement to the Private Placement Memorandum dated March 2, 2019 (the "Supplement PPM") disclosed to investors the risks of investing money in NP Skyloft, DST (the "Trust"), including the risk that is alleged by Plaintiff to have occurred, *i.e.*, the sale of the Trust property, payment to others before Plaintiff and, if nothing is leftover, loss of Plaintiff's entire investment. For that reason, each of Plaintiff's claims must be dismissed.

Moreover, Plaintiff has failed to join an indispensable party, the actual Trust through which Plaintiff made the investment at issue here. And the Trust is a necessary party that cannot be feasibly joined because any claims against the Trust related to the sale of beneficial interests in the Trust are subject an arbitration agreement. For this reason, too, Plaintiff's claims must be dismissed.

Lastly, to the extent that any fraud-based claims survive, Plaintiff has failed to plead them with the particularity required by Fed. R. Civ. P. 9(b).

[1] The Axonic Defendants and their affiliates purport to have taken over control of NP Skyloft ST, LLC, NP Skyloft JV, LLC and NP Skyloft, DST, yet all actions taken to do so were void *ab initio*, and are being hotly contested in litigation filed by the Nelson Partners Defendants in Travis County (Texas) District Court Case No. D-1-GN-21-000097, entitled *NP Skyloft DST, et al. v. Burgundy 523 Offshore Fund, LTD, et al.* As an initial matter, Plaintiff's claims arguably are not even ripe, given the pendency of the Texas litigation and the fight for control of Trust property. In any event, the Axonic Defendants and their affiliates and counsel (Loeb & Loeb and Burgee & Abramoff in this matter, and other counsel in related litigation) have all purported to act on behalf of these entities and have made appearances on their behalf. These attorneys have a disqualifying conflict of interest as they have taken positions adverse to the parties that lawfully control these entities (*i.e.*, the Nelson Defendants) and the statements and positions taken on their behalf must be disregarded. The Nelson Defendants reserve all rights related to these issues.

TUCKER ELLIS LLP
Chicago ◆ Cleveland ◆ Columbus ◆ Los Angeles ◆ San Francisco ◆ St. Louis

## II. STATEMENT OF FACTS

Nelson Partners, LLC sponsored an investment offering through NP Skyloft, DST (the "Trust") whereby the Trust sold beneficial interests to investors subject to a PPM and Supplement PPM. (Complaint ¶ 3.) The Trust would acquire the high-rise, student housing apartment complex known as Skyloft at 507 West 23rd Street, Austin, Texas (the "Trust Property") near the campus of the University of Texas. (*Id.*) Nelson Partners would manage the Trust Property and collect rents from tenants, and investors would receive certain tax benefits under the Internal Revenue Code and—potentially—distributions depending on a number of contingent events. (*Id.*)

Plaintiff, Co-Trustee of the Parziale Family Trust, invested in the Trust on January 16, 2020 in reliance on the PPM and the Supplement. (Complaint ¶ 12.) The PPM states, under RISK FACTORS, "[t]he interest are speculative and involve a high degree of risk. A prospective Investor should be able to bear a complete loss of his or her investment." (Docket No. 8, Brownlie Declaration (Ex. A) p. 74.)[2]

The PPM states that the funds from the sale of the beneficial interests in the Trust to investors (like Plaintiff) would be used to repay the Preferred Equity Provider if it provided bridge financing: "If capital is provided by the Preferred Equity Provider, then upon the sale of [Beneficial] Interests, the net proceeds, less commissions and fees paid to broker-dealers and their representatives, will be used to repay such capital." (*Id.*, p. 16.) The PPM further explains, "The capital provided by the Preferred Equity Provider, if any, would be provided to NP Skyloft JV, LLC and through NP Skyloft IB, LLC to the Trust. When [Beneficial] Interests are sold, net proceeds would be distributed to NP Skyloft JV, LLC and then to the Preferred Equity Provider until its entire investment is repaid." (*Id.; see also id.* p. 70 ("If capital is provided by the Preferred Equity Provider,

---

[2] When a document is incorporated by reference, "the district court may treat such document as part of the complaint, and thus may assume its contents are true for the purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Here, the documents referenced are included with Plaintiff's TRO papers filed in this action, specifically the declaration of Plaintiff's counsel, Robert Brownlie (Docket No. 8).

then upon the sale of [Beneficial] Interests, the net proceeds, less commissions and fees paid to broker-dealers and their representatives, will be used to repay such capital."); *id.* p. 81 ("If capital is provided by the Preferred Equity Provider, subject to limited exceptions, all net sales proceeds from the sale of [Beneficial] Interests must be used to repay to the Preferred Equity Provider the capital it invested."). The Supplement PPM confirms that the Preferred Equity Provider provided the bridge financing and that any funds from the sale of the Beneficial Interests would be used to repay the Preferred Equity Provider. (See, Docket No. 8, Brownlie Declaration (Ex. C) p. 303 ("The $35,000,000 invested by the Preferred Equity Provider was contributed to SkyLoft JV and then through SkyLoft IP to the Trust. When Interests are sold, net proceeds will be distributed to SkyLoft JV and then to the Preferred Equity Provider until its entire investment is repaid.").) The PPM also discloses that investors were entitled to review the Loan Documents underlying this transactions, upon request to Nelson Partners, which contained the salient terms of the JV LLC Agreement. (Docket No. 8, Brownlie Declaration (Ex. A) p. 10.)

## III.   APPLICABLE LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to state a claim upon which relief can be granted. Dismissal for failure to state a claim does not require the appearance, beyond a doubt, that the plaintiff can prove "no set of facts" in support of its claim that would entitle it to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561 (2007) (abrogating *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99 (1957)). In order for a complaint to survive a 12(b)(6) motion, it must state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A claim for relief is facially plausible when the plaintiff pleads enough facts, taken as true, to allow a court to draw a reasonable inference that the defendant is liable for the alleged conduct. *Id.* at 678. If the facts only allow a court to draw a reasonable inference that the defendant is possibly liable, then the complaint must be dismissed. *Id.* Mere legal conclusions are not to be accepted as true and do not

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

establish a plausible claim for relief. *Id.* at 679.

Under Rule 12(b)(7) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a complaint for failure to join an indispensable party under Rule 19. Fed. R. Civ. P. 12(b)(7). A Rule 12(b)(7) motion to dismiss will be granted only if the court determines that (1) joinder of a necessary party would destroy jurisdiction, and (2) the necessary party is, in fact, indispensable. *Shermoen v. United States*, 982 F.2d 1312, 1317 (9th Cir. 1992).

Lastly, where the complaint alleges fraud, a plaintiff must also satisfy the heightened pleading standards mandated by Rule 9(b). Rule 9(b) requires the plaintiff to state with particularity the circumstances constituting fraud, including the "who, what, when, where, and how" of the charged misconduct. *Vess v. Ciba Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003). "Under Rule 9(b), falsity must be pled with specificity, including an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.'" *Jackson v. Fischer*, 2013 WL 6732872 at *8 (N.D. Cal. 2013) (*quoting Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007)). "In addition, the plaintiff must do more than simply allege the neutral facts necessary to identify the transaction; he must also explain why the disputed statement was untrue or misleading at the time it was made." *Id.*

## IV. LAW AND ARGUMENT

Applying the pleading standards above, Plaintiff's Complaint must be dismissed because (1) the PPM and Supplement to the PPM disclosed the risks inherent in any investment in the Trust; (2) Plaintiff failed to join an indispensable party, *i.e.*, the Trust, and the Trust cannot be joined due to the arbitration provision in the Purchase Agreement; and (3) Plaintiff's claims otherwise are inadequately plead.

### A. The Risks of the Skyloft Investment Were Disclosed; There Were No Actionable Misrepresentations As a Matter of Law

Each of Plaintiff's claim are premised on the fundamental allegation that the Nelson Defendants made misrepresentations or omissions related to the sale of beneficial

interests in the Trust. (*See*, *e.g.*, Complaint at ¶¶ 2, 6, 8, 38-41, 43, 63, 65, 67-69 (First Claim), 72-74 (Second Claim), 77-79 (Third Claim), 82-83 (Fourth Claim), 86-87 (Fifth Claim), 90-94 (Sixth Claim), 98-99 (Seventh Claim), 102-103 (Eighth Claim); *see also* Complaint at ¶¶ 4-5, 32-37, 44-47.) All of Plaintiff's claims fail because, as this Court has already found, even taking the allegations of the Complaint as true, it does not raise a reasonable inference that the Nelson Defendants misrepresented or omitted material facts. This alone warrants dismissal.

Plaintiff's argument is premised entirely on the allegation that the Nelson Defendants did not disclose the existence or terms of the JV LLC Agreement in either the PPM or the Supplement. (Complaint at ¶¶ 38-41.) But the actual PPM and Supplement say otherwise. As shown, all of the following are true:

- The PPM states that funds from the sale of the beneficial interests in the Trust to investors would be used to repay the Preferred Equity Provider if it provided bridge financing: "If capital is provided by the Preferred Equity Provider, then upon the sale of [Beneficial] Interests, the net proceeds, less commissions and fees paid to broker-dealers and their representatives, will be used to repay such capital."
- The PPM states: "The capital provided by the Preferred Equity Provider, if any, would be provided to NP Skyloft JV, LLC and through NP Skyloft IB, LLC to the Trust. When [Beneficial] Interests are sold, net proceeds would be distributed to NP Skyloft JV, LLC and then to the Preferred Equity Provider until its entire investment is repaid."
- The PPM states: "If capital is provided by the Preferred Equity Provider, then upon the sale of [Beneficial] Interests, the net proceeds, less commissions and fees paid to broker-dealers and their representatives, will be used to repay such capital."
- The PPM states: "If capital is provided by the Preferred Equity Provider, subject to limited exceptions, all net sales proceeds from the sale of [Beneficial]

TUCKER ELLIS LLP
Chicago ◆ Cleveland ◆ Columbus ◆ Los Angeles ◆ San Francisco ◆ St. Louis

TUCKER ELLIS LLP
Chicago ◆ Cleveland ◆ Columbus ◆ Los Angeles ◆ San Francisco ◆ St. Louis

Interests must be used to repay to the Preferred Equity Provider the capital it invested."

- The Supplement PPM states: ("The $35,000,000 invested by the Preferred Equity Provider was contributed to SkyLoft JV and then through SkyLoft IP to the Trust. When Interests are sold, net proceeds will be distributed to SkyLoft JV and then to the Preferred Equity Provider until its entire investment is repaid."

Moreover, investors were entitled to review the Loan Documents underlying this transactions, upon request of Nelson Partners, which contained the salient terms of the JV LLC Agreement. (Docket No. 8, Brownlie Declaration (Ex. A) p. vi.)

Given all these disclosures, it is not surprising that this Court, in denying Plaintiff's request for a temporary restraining order, held:

> Although Plaintiff argues neither the PPM, nor the Supplement PPM, disclosed to the Investors that if the Preferred Equity Provider (Special Members) was not repaid in full they could take over as the Trustee of the Trust and force a sale of the Trust Property, the Supplement PPM does state, "When Interest are sold, net proceeds will be distributed to SkyLoft JV and then to the Preferred Equity Provider until its entire investment is repaid." (Decl. Brownlie, Ex. C at p. 303.) Additionally, under the RISK FACTORS portion in the Supplemental PPM, the agreement states, "The Interest are speculative and involve a high degree of risk. A prospective Investor should be able to bear a complete loss of his or her investment." (Decl. Brownlie, Ex. A.) Thus, language involving a "sale" or "complete loss" of the Interest are neither omitted nor misrepresented, and the terms are not misleading because the terms state that the Preferred Equity Providers will be repaid

first from any sale of the Interest.

(Docket No. 25 at PageID#1142 (*Parziale v. Nelson*, 2021 WL 1050056 (C.D. Cal. Mar. 18, 2021)).

For these reasons, Plaintiff's claims should all be dismissed.

**B. Plaintiff Failed to Join NP SkyLoft DST, An Indispensable Party**

Federal Rule of Civil Procedure 12(b)(7) permits a party to move for dismissal for failure to join a party recognized as indispensable by Federal Rule of Civil Procedure 19. Fed. R. Civ. P. 12(b)(7); *Quileute Indian Tribe v. Babbitt*, 18 F.3d 1456, 1458 (9th Cir. 1994). Rule 19 "governs compulsory party joinder in federal district courts." *E.E.O.C. v. Peabody W. Coal Co. ("Peabody I")*, 400 F.3d 774, 778 (9th Cir. 2005). When determining whether dismissal is appropriate under Rule 12(b)(7), the court undertakes "three successive inquiries." *Id.* at 779.

"First, the court must determine whether a nonparty should be joined under Rule 19(a)"—that is, whether a nonparty is "necessary." *Peabody I*, 400 F.3d at 779. A nonparty is "necessary" if joinder is "'desirable' in the interests of just adjudication." *Id.* (quoting Fed. R. Civ. P. 19 Advisory Committee Note (1966)). "There is no precise formula for determining whether a particular nonparty should be joined under Rule 19(a).... The determination is heavily influenced by the facts and circumstances of each case." *E.E.O.C. v. Peabody W. Coal Co. ("Peabody II")*, 610 F.3d 1070, 1081 (9th Cir. 2010) (quoting *N. Alaska Envtl. Ctr. v. Hodel*, 803 F.2d 466, 468 (9th Cir. 1986)).

A nonparty can be necessary under Rule 19(a)(1)(A) or Rule 19(a)(1)(B). A nonparty is necessary under Rule 19(a)(1)(A) if "in that person's absence, the court cannot accord complete relief among existing parties." Fed. R. Civ. P. 19(a)(1)(A). A nonparty is necessary under Rule 19(a)(1)(B) if that person "claims a legally protected interest in the subject of the suit such that a decision in its absence will (1) impair or impede its ability to protect that interest; or (2) expose [an existing party] to the risk of multiple or inconsistent obligations by reason of that interest." *Dawavendewa v. Salt River Project Agr. Imp. & Power Dist.*, 276 F.3d 1150, 1155 (9th Cir. 2002).

Second, if a nonparty is necessary, the court determines "whether it is feasible to order that the absentee be joined." *Peabody I*, 400 F.3d at 779. Joinder is not feasible "when venue is improper, when the absentee is not subject to personal jurisdiction, and when joinder would destroy subject matter jurisdiction." *Id.* Third, if joinder is not feasible, the court must determine whether the party is "indispensable" under Rule 19(b), that is, whether "in equity and good conscience, the action should proceed among the existing parties or should be dismissed." Fed. R. Civ. P. 19(b). "The inquiry is a practical one and fact specific and is designed to avoid the harsh results of rigid application." *Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990) (citations omitted).

When considering a motion to dismiss under Rule 12(b)(7), the court accepts as true the allegations in the plaintiff's complaint and draws all reasonable inferences in the plaintiff's favor. *Paiute-Shoshone Indians of Bishop Cmty. of Bishop Colony, Cal. v. City of Los Angeles*, 637 F.3d 993, 996 n.1 (9th Cir. 2011). But the court may consider evidence outside of the pleadings. *See McShan v. Sherrill*, 283 F.2d 462, 464 (9th Cir. 1960). "The moving party has the burden of persuasion in arguing for dismissal" for failure to join. *Makah Indian Tribe*, 910 F.2d at 558.

**1. NP SkyLoft, DST Is A Necessary Party**

There is no precise formula for determining whether a particular non-party is necessary to an action. *See Bakia v. County of Los Angeles*, 687 F.2d 299, 301 (9th Cir. 1982). "The determination is heavily influenced by the facts and circumstances of each case." *Id.* Nevertheless, Rule 19(a) contemplates a two-part analysis to aid in determining if an absent party is necessary. First, the court must consider if complete relief is possible among those parties already in the action. Second, the court must consider whether the absent party has a legally protected interest in the outcome of the action. *See Makah Indian Tribe*, 910 F.2d at 558. In deciding a Rule 19 motion, courts routinely look outside the pleadings in order to determine whether an absent party is indispensable. *Biagro W. Sales Inc. v. Helena Chem. Co.*, 160 F. Supp. 2d 1136, 1143

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

(E.D. Cal. 2001) ("Furthermore, where a party asserts that a plaintiff … has failed to join an indispensable party, the court may consider facts beyond the scope of the plaintiff's complaint. Defendant may produce affidavits and other properly presented evidence in support of its motion.").

Here, Plaintiff cannot get complete relief without joining the Trust as the Trust is *the party* that made the alleged misrepresentations or omissions and is *the party* from whom Plaintiff purchased the interests in question. Second, the Trust is a necessary party because the Trust undoubtedly has a legal interest in the litigation. Plaintiff seeks relief for alleged "omissions" and "misrepresentations" arising out of the PPM and Supplement in connection with her purchase of interests. *See* Complaint. Yet, the Nelson Defendants were not a party to the Purchase Agreement and other documents by which Plaintiff purchased the interests—according to Plaintiff herself. (Docket No. 24, Pl.'s Reply ISO Pl.'s Ex Parte Application for a TRO at 1-3.) Instead, "the agreement is between NP SkyLoft DST (the "Trust") and the buyer or investor," *i.e.*, Plaintiff. (*Id.* at 2.) But, Plaintiff failed to join the Trust as a defendant in her Complaint. "A party to a contract is necessary, and if not susceptible to joinder, indispensable to litigation seeing to decimate that contract." *Dawavendewa*, 276 F.3d at 1157; see also *Kescoli v. Babbitt*, 101 F.3d 1304, 1310 (9th Cir. 1996) (where plaintiff's action would affect agreements to which tribes were parties, tribes were necessary pursuant to Rule 19(a)). By failing to join the Trust, Plaintiff failed to join a necessary party to this litigation.

Generally, a necessary party will be joined as a party. Fed. R. Civ. P. 19(a). Here, however, Plaintiff knows the Trust cannot be joined because Plaintiff agreed to arbitrate any claims arising out of the Parziale Family Trust's investment in the Skyloft Trust. Plaintiff (through co-trustee James Parziale) signed as a condition precedent to investing in the Skyloft Trust, an agreement which contains the following mandatory arbitration provision:

> 5.17 <u>BINDING ARBITRATION</u>.
>
> ANY DISPUTE OR CONTROVERSY ARISING OUT OF OR

TUCKER ELLIS LLP
Chicago ◆ Cleveland ◆ Columbus ◆ Los Angeles ◆ San Francisco ◆ St. Louis

> RELATING TO,THIS AGREEMENT SHALL BE RESOLVED BY FINAL AND BINDING ARBITRATION BROUGHT IN IRVINE, CALIFORNIA, UNDER THE AUSPICES OF JAMS, INC., AND THE PARTIES HERETO SUBMIT TO THE IN PERSONAM JURISDICTION OF SUCH TRIBUNAL AND WAIVE ANY OBJECTION THAT SUCH FORUM IS INCONVENIENT OR OTHERWISE IMPROPER.

(Docket No. 8, Brownlie Declaration (Ex. C) p. 320; *see also* Docket No. 14-12, Nelson Declaration, (Ex. F-Parziale Executed Purchase Agreement and Trust Agreement).)

In addition to agreeing to binding arbitration, Plaintiff also agreed to waive her legal right to proceed in this or any other court:

> 5.18 WAIVER OF LEGAL RIGHTS.
>
> BY INITIALING IN THE SPACE BELOW, THE PARTIES ACKNOWLEDGE AND AGREE TO HAVE ANY DISPUTE AIRSING OUT OF THE MATTERS INCLUDED IN THIS ARTICLE DECIDED BY NEUTRAL ARBITRATION AS PROVIDED UNDER APPLICABLE LAW AND THAT THEY ARE KNOWINGLY WAIVING ANY RIGHTS THEY MAY POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR BY JURY TRIAL. THE PARTIES FURTHER ACKNOWLEDGE AND AGREE THAT THEY ARE WAIVING THEIR JUDICIAL RIGHTS TO DISCOVERY AND APPEAL EXCEPT TO THE EXTENT SUCH RIGHTS ARE SPECIFICALLY INCLUDED IN THIS ARTICLE. IF EITHER PARTY REFUSES TO SUBMIT TO ARBITRATION AFTER EXECUTION OF THIS AGREEMENT AND INITIALING BELOW, SUCH PARTY

MAY BE COMPELLED TO ARBITRATE UNDER APPLICABLE LAW. EACH PARTY'S AGREEMENT TO THIS ARTICLE IS VOLUNTARY. THE PARTIES HAVE READ AND UNDERSTAND THE FOREGOING AND AGREE TO SUBMIT DISPUTES OUT OF THE MATTERS INCLUDED IN THIS ARTICLE TO BINDING ARBITRATION.

(Docket No. 8, Brownlie Declaration (Ex. C) p. 320-321.) Accordingly, joinder of NP SkyLoft, DST is not feasible as any dispute arising out of or relating to the sale of beneficial interests in the Trust are subject to binding arbitration and the Trust would so move to compel. Plaintiff cannot have it both ways. She cannot argue that Defendants are not parties to the agreements upon which Plaintiff's claims are based to avoid enforcement of the binding arbitration agreement, and simultaneously argue that Defendants are liable for the alleged "omissions" and "misrepresentations" in those very agreements.[3]

Plaintiff's Complaint must be dismissed so that Plaintiff can arbitrate her claims against the Trust and any other defendants, as she agreed when the trust for which she is serving as trustee signed the investment agreements.

---

[3] While this Court previously held that as non-signatories, the Nelson Defendants could not compel Plaintiff to arbitrate, the parties did not explicitly raise, and thus the Court did not necessarily have the opportunity to consider, the doctrine of equitable estoppel. *See, e.g., Mundi v. Union Security Life Ins. Co.*, 555 F.3d 1042, 1045-46 (9th Cir. 2009) (recognizing equitable estoppel as principle potentially binding a nonsignatory to an arbitration agreement). "Equitable estoppel 'precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes.'" *Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006) (quoting *Wash. Mut. Fin. Group, LLC v. Bailey*, 364 F.3d 260, 267 (5th Cir. 2004)). A signatory may be required to arbitrate a claim brought by a nonsignatory "because of the close relationship between the entities involved, as well as the relationship of the alleged wrongs to the non-signatory's obligations and duties in the contract and the fact that the claims were intertwined with the underlying contractual obligations." *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates*, 269 F.3d 187, 201 (3d Cir. 2001)). This facet of equitable estoppel is applicable here, where Plaintiff alleges that nonsignatories to the PPM and PPM Supplement and Purchase Agreement are liable for misrepresentations and omissions contained in them.

TUCKER ELLIS LLP
Chicago ◆ Cleveland ◆ Columbus ◆ Los Angeles ◆ San Francisco ◆ St. Louis

**C. Plaintiff Fails to Plead Her Claim of Fraud With Specificity Required Under Rule 9(b)**

Federal Rule of Civil Procedure 9(b) requires "all averments of fraud" to be "stated with particularity." Fed.R.Civ.P. 9(b). The Ninth Circuit has held that "for any claim grounded in fraud, even where fraud is not an essential element of the claim, the particular averments of fraud must meet the requirements of Rule 9(b)." *Id.* (citing *Vess v. Ciba-Ceigy Corp. USA*, 317 F.3d 1097, 1103-05 (9th Cir.2003).)

A pleading is sufficient under Fed.R.Civ.P. 9(b) if it "[identifies] the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." *Walling v. Beverly Enterprises*, 476 Fed.2d 393, 397 (9th Cir.1973). This requires that a false statement must be alleged, and that "circumstances indicating falseness" must be set forth. *In re GlenFed Sec. Litig*., 42 F.3d 1541, 1548 (9th Cir. 1994). Thus, "[a]verments of fraud must be accompanied by the who, what, when, where, and how of the misconduct alleged." *Vess v. Ciba-Geigy Corp. U.S.A.*, 317 F.3d at 1106 (internal quotation marks and citations omitted). It is not sufficient to merely identify the transaction. Rather, "[t]he plaintiff must set forth what is false or misleading about a statement and why it is false." *Id*. (citations omitted). *See also Fidelity Mortg. Corp. v. Seattle Times Co*., 213 F.R.D. 573, 575 (W.D. Wash, 2003) (Defendant's motion to dismiss granted because plaintiff's complaint failed to "give particulars as to the respect in which plaintiff contends the statements are fraudulent."; The Complaint failed to "set-forth why the information published by the Seattle Times Co. is false or misleading."). Here too, Plaintiff's Complaint only identifies what the alleged "misrepresentations" and "omissions" are, but failed to set-forth why the "misrepresentation" or "omissions" in the PPM or Supplement are misleading.

Further, Plaintiff cannot circumvent these requirements via general allegations of a coordinated fraudulent ploy without specifically identifying the roles and specific fraudulent conduct of each defendant. *Konopasek v. Ten Associates, LLC* (C.D. Cal., Oct. 22, 2018) 2018 WL 6177249, at *4 (complaint's allegations "generally lump all of

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Los Angeles ♦ San Francisco ♦ St. Louis

the Defendants together, which is insufficient under the heightened pleading requirements for claims sounding in fraud."). Here, Plaintiff's Complaint generally lumps all of the Nelson Defendants together, which as stated above, is insufficient under the heightened pleading requirements for claims sounding in fraud. Complaint at ¶¶ 89-96. Plaintiff makes no specific allegations against each particular Nelson Defendant. This is improper under Rule 9(b) and thus, this Court should dismiss all of Plaintiff's fraud and misrepresentation-based claims against the Nelson Defendants.

## V. CONCLUSION

For the reasons set forth herein, Plaintiff's claims against the Nelson Defendants should be dismissed.

DATED: May 17, 2021

TUCKER ELLIS LLP

By: */s/ Matthew I. Kaplan*
Matthew I. Kaplan
matthew.kaplan@tuckerellis.com
Attorney for Defendants
PATRICK NELSON and NELSON PARTNERS, LLC

## CERTIFICATE OF SERVICE

I declare that I am a citizen of the United States and a resident of Los Angeles, California or employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is Tucker Ellis LLP, 515 South Flower Street, Forty-Second Floor, Los Angeles, California 90071-2223.

On May 17, 2021, I served the foregoing document(s) described as **NELSON DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES** on the interested party(ies) in this action as follows:

[See Attached Service List.]

(X) **ELECTRONICALLY VIA ECF:** the above-entitled document to be served electronically through the United States District Court, Central District ECF website, addressed to all parties appearing on the Court's ECF service list. A copy of the "Filing Receipt" page will be maintained with the original document in our office.

(X) **FEDERAL:** I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on May 17, 2021, at Los Angeles, California.

*/s/ Matthew I. Kaplan*
Matthew I. Kaplan

**SERVICE LIST**

| | |
|---|---|
| Robert W. Brownlie<br>Kori Kempton, Assistant<br>BROWNLIE HANSEN LLP<br>10920 Via Frontera, Suite 550<br>San Diego, CA 92127<br>Robert.Brownlie@brownliehansen.com<br>Ryan.Hansen@brownliehansen.com | *Attorneys for Plaintiff SANDRA PARZIALE, as co-trustee of the Parziale Family Trust* |
| John G. Burgee<br>BURGEE & ABRAMOFF, P.C.<br>20501 Ventura Blvd., Suite 262<br>Woodland Hills, CA 91364<br>jburgee@bandalaw.net | *Attorneys for Specially Appearing Defendant NP SKYLOFT ST, LLC* |
| Bernard R. Given II<br>David Grossman<br>Martha Ortiz, Assistant<br>LOEB & LOEB LLP<br>10100 Santa Monica Blvd., Suite 2200<br>Los Angeles, CA 90067<br>bgiven@loeb.com<br>dgrossman@loeb.com<br>mortiz@loeb.com | *Attorneys for NP SKYLOFT JV, LLC; ACO SKYLOFT MANAGER, LLC; AXONIC CREDIT OPPORTUNITIES MASTER FUND, LP; AXSPV LLC SERIES NB CRE LENDER; AXSPV LLC SERIES SBL CRE LENDER; AXSPV LLC SERIES ACO CRE LENDER; AXONIC CAPITAL, LLC; and CLAYTON DEGIANCINTO* |